The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good morning. This next case is case number 4-24-0322, People v. Christopher Armstrong. Before we proceed, could we have appearances please? First for the appellant. Gregory Peterson, your honor. All right. Thank you. And for the appellee. Alexandria Wilson, 7-11 student. David Robinson, supervising attorney. Thank you. Mr. Peterson, you may proceed with your argument. May it please the court, counsel. My name is Gregory Peterson. I work for the Office of the State Appellate Defender and I represent Christopher Armstrong. What we're dealing with here comes down to essentially 2 issues. First of all, did Mr. Armstrong receive the reasonable assistance of counsel during the 8 years in which no results were achieved on his petition? And secondly, how does the fact that he eventually went pro se affect the calculus of that decision? I'm planning today to focus the vast majority of this argument on issue 1 in the brief. And the 2 things that I just mentioned are essentially both from issue 1. I do think issue 2 plays into that, though, and I'd be happy to answer any questions this court has. But over the 8 years that this petition sat at the second stage, I don't want to say that no attorney ever did anything for Mr. Armstrong. But I think it is fair to say that no attorney ever accomplished anything for Mr. Armstrong. We see from time and time again, attorneys begin to contact these witnesses, begin to establish contact, start to have, at one point we see an affidavit that he's looking to get signed, and then the attorney leaves. And the attorney passes the case over to the next public defender in line and they start from zero again. Rather than, we've nailed down this one witness, I just need her to sign in front of a notary, and I'm on to the second witness who I'm visiting in prison. That's what Mr. Ramos was up to in about 2018 or 2019. Suddenly, when it gets passed to the attorney, they're talking to the first witness again, and not even talking, but trying to hunt down a phone number. It didn't get passed on. There was no continuity of representation. And as a result, Mr. Armstrong's case kept falling through the cracks. Now, the elephant in the room here is that I'm not the briefing attorney on this case. My colleague that wrote the brief here has left the office and I stepped in, and I'm ready to take this oral argument on the day it was scheduled, being fully aware of the arguments that were made, and also having Mr. Gabb's notes to work off of. That's how public defense works. Next person up. The importance is that the client gets the representation. And here, Mr. Armstrong didn't get anything for eight years. These attorneys didn't get the petition. They didn't file a 651C certificate. And they also didn't stand on the petition either. So I want to be very clear. We can't presume that the attorneys thought there was nothing there, and that's why they did nothing, because an attorney has a duty in that case to stand on the petition or even, if necessary, withdraw. And withdrawal here would have required a Keener brief because there was a finding of gist, but that's not what these attorneys did. And we always see that there are some teeth to the argument. Now, I understand that the petition, as amended by Mr. Armstrong pro se, the merit of that petition is not for this court to consider. The question is reasonable assistance, but we see in that petition an affidavit from a potential alibi witness that would say he was with me, this never happened. But it's in the wrong form. It's not signed by her. It's not notarized. That's the exact kind of thing that an attorney would have been able to achieve for Mr. Armstrong. But he didn't have an attorney that was actually moving his case forward. Instead, he had Mr. Sheets making steps and then Mr. Sheets is gone. Mr. Ramos comes in and I would point to what Mr. Ramos was doing as very promising as a start. But then Mr. Ramos becomes a prosecutor. Mr. Bowden comes in and it happens. So it's passed attorney to attorney for eight years. And I think it's important to focus on the language that Mr. Armstrong used when he was trying to go pro se. Petitioner would be better served being pro se. Is his phrasing that's 400 that's page 492 of the common law record. It's always phrased as I think they're conflicted at the start, but by the end, it's I think they're conflicted and they're not doing anything for me. You should you should appoint an outside lawyer. You say, could I interrupt you for a moment? And I want to just make this observation. I speaking for myself and not for my colleagues here. I can't say that looking at this, I can imagine any scenario where an 8 year period for a case to have taken in the post conviction realm, such as this would ever be acceptable. Certainly, looking at the sequence here, you've accurately described the turnover in attorneys and the what appears to be a rotation of trial judges going through here. And having been a trial court judge, all of us on the panel have been. We understand that there are assignments as trial court judges that you are within a particular courtroom for a period of time, and then there are new judge will come in and take over. And unfortunately, in the post conviction realm, there are prolonged proceedings. Would you agree that there are no artificial time limits that would govern the resolution of a post conviction proceeding at the trial court level? Absolutely, your honor. And I mean that both from the statute, there's no time limit and from I don't want this court to set a particular number of years as when it matters. So, we don't have we don't have time limitations. You don't have speedy trial type of mechanisms in place to be able to make sure these are handled in a timely manner. And again, I don't think it would be reasonable to conclude that this was done in a timely manner. However, what is the legal framework for analyzing an unreasonable assistance of counsel claim here in this setting? What is it that you have to establish in order for us to find your client received unreasonable assistance? It comes from 651, your honor, it's those 651 duties. And the reason the time matters here is because we also understand that the 651 duties are not to be accomplished instantaneously. A client, if Mr. Armstrong had fired his public defender on day one, and then later on appeal tried to say, I got unreasonable assistance. He didn't talk to me at all. When there had been one day, we all understand that that claim would fail and it would fail easily. So, the time limit is not an artificial time limit. It's simply the timing of the case informs us in when it is reasonable for an attorney to have accomplished those concrete duties. Well, what is it about that, though, the passage of time that equates with unreasonable assistance? You know, I guess, are you talking about prejudice to the defendant? Somehow his claim has been impaired because of the passage of time. Is that what you're saying? It's part of it, your honor. The passage of time absolutely impaired his claim in a practical manner here. And we see that with these affidavits being written Mr. Armstrong's hand and unsigned. So, we do see that essentially the passage of time has prejudiced him by forcing him eventually to fire his attorney because that seems to be the only way to move things forward. Is that in the record, by the way, that he indicate that he was discharging his attorney and proceeding pro se because of the length of time that had passed? It's not the only reason, your honor. But yes, 492 of the common law record petitioner would be better served being pro se. And then particularly, I would focus this court's attention on the filing where he details all of the things that haven't happened. And this page is 490 and 491 of the common law record. So, you see, and I don't want to hide the ball here. I don't want to claim that he's not filing motions to go pro se essentially throughout this case. But they start out as purely about conflict and then they become, I'm being, no one's doing anything for me. And so eventually what he's saying in his final motions is, I don't want to do this alone, but alone feels better than what I've been given. And I want to focus on that partially because there were moments earlier in this case where a court actually confronted Mr. Armstrong in open court and said, you're looking to fire your lawyer. Here's how that would work. Do you want to do that? 727 of the report of proceedings has that back when he's still with his first public defender, Mr. Sheets. And every single time a court asks him about it, he equivocates. And he decides, no, I'll stick with my lawyer. They are doing things for me now. I'll stay with it. And the crucial difference is that the time that he actually does go pro se, no questions are asked of him. None whatsoever. Not even are you doing this? His lawyer, Mr. Vespa says, my client is looking to proceed pro se. And the court says, well, Mr. Armstrong, that's your prerogative. But on appeal, you're not making a claim that the waiver of counsel was ineffective. You're making a claim that he received unreasonable assistance of counsel. Correct. I'm not making an independent claim of that, Your Honor, but I think the 2 questions are tied up with each other. And I come back to the example of a client that goes pro se on day 1 or day 2 of 2nd stage proceedings. If that's a valid choice to go pro se, I don't think he would then be able to say there's no certificate here. He didn't talk to me in the one day he represented me. So I think the 2 are inextricably tied up with each other. And I think it's important to see what actually happened here when he went pro se, which is that the court asked him nothing. Now, there isn't a list of admonitions that says this is exactly what the court has to do, as there is, for instance, in the 401 context. But the reason admonitions exist in the first place, the reason that admonitions have been put into place in other contexts is to ensure that decisions are made in a knowing and voluntary manner. And also, I think, to some extent, to raise a presumption for a court of appeal to say he was properly instructed on this, we can presume that the decision was made knowingly and understandingly. This is absolutely something that my office raises all the time in other contexts. Right? These admonitions were not perfect, but they were there. And the fact that they were there makes our argument harder because of this presumption. Well, here we have no admonitions, so we have no presumption. And while the court is a different judge rotating through every time where there is that change, we can presume that the trial court knows the entire file. So we can presume that the trial court has been aware that these motions to go pro se have been pending for seven, even eight years, and that every time the motion has been withdrawn. That's equivocation, and absolutely at a very minimum level, the court needed to ask Mr. Armstrong, are you sure? And that's not something we would say in every context, but here we have eight years of every time he's asked, are you sure? He says, actually, I want to keep my lawyer. But we also, I want to, focusing in, because the big question here is on reasonable assistance of counsel. I want to ask before you get fully into that, are we to measure reasonable assistance by the actions of each individual public defender that represented your client? Or are you asking us to look at the totality of all of their representation? Because it might, well, I'll ask you, what difference does that make? How should we be viewing that? I think you should be looking at the totality, Your Honor, and the reason for that is the structure of the Post-Conviction Hearing Act. The petitioner is guaranteed the reasonable assistance of counsel. This is petitioner-focused. It's about what the client receives, as opposed to, for instance, an ethical rule that we apply to each individual attorney. So I absolutely think there is room here, and frankly, I think it's the decision this court could reach and should reach, that he received unreasonable assistance of counsel without pinning that to any one of his four lawyers in particular. And this, Your Honor, actually with exactly what I was about to go into, which is what those individual lawyers did, because I'd like to single out Mr. Ramos here as having absolutely begun the steps of effective, let alone reasonable, assistance. And you see this from what Mr. Ramos says at each hearing. I'm trying to locate a witness. Then the next hearing, I found a phone number for the witness. Then the next hearing, I called her number, and there wasn't here. There's even a moment where Mr. Ramos turns to the back of the courtroom and says, is anyone here for Chris Armstrong? I'd like to talk to you after this. I'm trying to locate someone. Then he locates her. Then they have a meeting. Then he's on to the next witness, and he's setting up trips to Menard and Pontiac in the same week to do this. So we see it building up. Compare that to Mr. Bowden, his third lawyer. On August 21st of 2020, Mr. Bowden is starting from scratch. Then in December 2020, he's attempting to speak to Eric Adai. April 2021, he's still trying. June, he's still trying. By September of 2021, he's asking for a continuance, and he's not even providing details of why anymore. So it's slowing down. It's grinding to a halt, and it's already been eight years. I think it's exceedingly reasonable of Mr. Armstrong to have concluded that this wasn't going anywhere, because he can feel it slowing down. And I think what we think about what was in Mr. Armstrong's head in that moment is absolutely colored by the fact that this is happening in 2022 and not in 2015. So the timing matters on that, and the feeling of, I almost got something earlier, but then the guy left, and I'm back at square one, and now it's even slowing down from there. I think that matters. I also would like to point this court to page 761 of the report of the proceedings, because I think there is a question of what would reasonable counsel have done here. The court tells Mr. Ramos, keep a diary of your attempts. Keep a log of what you are actually doing, because it sounds like these affidavits are going to be the crux of what you're raising here. I want you to have proof that you're taking actual steps to accomplish these 51C tasks. That's something I would ask, should this court remand for second-stage proceedings, I'd ask this court to include that in the opinion, that we need the trial court to treat this case as higher priority because of its age. And this goes back to what Justice Harris was asking about at the start, is that a trial court understands that post-conviction proceedings are not going to be at the same level of priority that a heat or murder case would be, or that a pretrial fairness case has a ticking clock that matters. I understand that the post-conviction proceedings at the second stage are not burning a hole in the court's docket, but they should be after eight years. A trial court after this length of time should absolutely be treating this with more priority purely because of its age. And that's what Mr. Armstrong was denied here. Mr. Peterson, hypothetically, defendant hadn't gone pro se there at the end, but counsel had continued on. And let's say that amendments to the petition had been made, a hearing proceeded on the amended petition and the trial court denied the amended petition. Could defendant make any sort of claim on appeal that the denial should be reversed, that the trial court's decision should be reversed simply because of the eight-year delay? No, Your Honor. Okay. So that being the case, what is it about defendant being pro se in this case as opposed to having been represented by counsel at the time that warrants reversal? For starters, Your Honor, I think the key difference between your hypothetical in this case, as I see it, is that counsel amended the petition. But I understand that at the same time, Mr. Armstrong amended the petition. The structure of the Post-Conviction Hearing Act says that you have the assistance of a lawyer at the second stage. So I think that that's the key difference here, is that the arguing that the trial court's decision to dismiss the petition was itself incorrect. And I think it's a different argument to say this eight-year delay in which nothing was accomplished, where those key 651 duties were never actually accomplished, that we only saw baby steps towards them or an indication of future compliance with the rule. I think that's the key difference here, is that Mr. Armstrong's amendments were not as strong. And I see my time's expired. May I briefly finish the answer? Please finish up. His amendments are weaker because he's not a lawyer. His affidavits are in the wrong form because he's not only not a lawyer, but he's incarcerated. He can't simply drive over to Erica Day's home and have her sign something. So this week, it's all tied together. The weakness of the final petition is actually not at issue here because of, among other things, Suarez, but it directly follows from the fact of this eight-year delay where four lawyers accomplished nothing. A few of them did some preliminary steps, but they accomplished nothing. So we'd ask this court to reverse and remand for second-stage proceedings. We are not necessarily only asking for remedies where this court would appoint private counsel, but at second-stage proceedings, we would like the remand judge to treat this case as a higher priority than it was. All right. Thank you, Mr. Peterson. You'll have time in rebuttal. Ms. Wilson, you may proceed with your argument. May I please the court, counsel? This court firmly holds the values of the Illinois Post-Conviction Act. Thus, this court should affirm the circuit court's decision. First, defendant enjoyed reasonable assistance of counsel during his post-conviction proceeding regarding his first-degree murder sentence. This court has determined in People v. Ames that the right to counsel may be relinquished by waiver, forfeiture, and waiver by conduct. And this court has addressed this very issue in People v. Leslie, where this court held that the defendant waived his right to counsel when he refuses to work with appointed counsel. In Leslie, the defendant filed motions to hire outside counsel to rehire the public defender, and it was a continuous cycle until the court said to the defendant they could not just choose who from the public defender is going to represent them. Ms. Wilson, good morning. I have a question. Is there any evidence in this record that the defendant refused to work with any of the attorneys? I know the record reflects that he had concerns at the very beginning as opposing counsel made with respect to representation because of who was trial counsel. But what is there in this record that would suggest he refused to work with any of these four attorneys? Yes, Your Honor. Pointing Your Honor's attention to the record, there has been several different motions that the defendant has filed himself claiming to be pro se in regard to conflicts of interest, asking the court to appoint private counsel, as well as motion to reconsider those set appointments. Starting on November 2014, that's when the defendant filed his first motion regarding the conflict of interest. And moving on to May of 2015, after the assistant public defender started their representation, the defendant filed another motion asking the court that the defendant no longer wanted to be working with the public defender. He had a motion to proceed pro se, and that's on R-710 through 711. Moving to the third motion, when the defendant was, in fact, represented by the assistant public defender, the defendant filed in June of 2016 a motion to reconsider appointment of private counsel. And this continuous cycle happened on and on all the way up until June 21st of 2022, Your Honor. There was eight different motions throughout the continuous span of the defendant's representation. Every single time, the assistant public defender had to stop their representation when the defendant filed those motions, and then he would then ask the court to reappoint them when he withdrew his motions. And would you concede that those motions to proceed either pro se or for private counsel happened during a period of time when there was nothing happening with respect to, except for perhaps trying to find a witness or get an affidavit? Would you concede that this was out of frustration by the defendant? Yes, Your Honor, I would concede that the defendant was frustrated. However, when looking at the facts of this case, this case is from a murder that happened in 2008. Your Honor, in 2008, I was only seven years old. This is a case that was from so long ago that had several different claims that were very strenuous issues. The post-conviction petition had seven different issues. It was burden of proof issues, due process issues. And because of that, it took the assistant public defender longer time to find those witnesses to investigate this post-conviction petition further. So it was the defendant who wanted to speed up the courts and finding out all of this information. But we have to remember that this case started all the way in 2008, and that is very important. And most state's attorney's offices in the state do have investigators. It is not up to the attorney himself or herself to go out and look for witnesses. I can't speak specifically to the state's attorney's office in this particular case, but most of them have assistance in doing that and in actually finding addresses and phone numbers. Yes, Your Honor. I'm not clear on the circumstances here. I apologize for that. No, that's okay. Thank you for your answer to the question. Go ahead with your argument, Ms. Wilson. Yes, Your Honor. Under these facts, every single time the defendant filed a motion to proceed pro se or to hire private counsel, he would fire the public defender and every motion was heard and the defendant changed his mind every single time. Thus, this court should affirm the circuit court's decision on this issue. Moving on to the second issue, Your Honors, as I just want to ask, is there any questions about the second issue? Since there was no explanation on the first portion of this argument in regard to the second issue. So I want to ask, are there any questions before I proceed to the second issue? As Wilson said to ask. Go ahead. We'll load you up with questions. Well, one, doesn't the record reflect here that on one of the times, and I'd have to look at my notes here to get the specific date that I think I can forget, it took one year for the trial court to rule on that motion. Let me see which one it is. It was specifically February 21st, I believe, of 2017. There was a motion to represent himself. It was actually heard and ruled on February 23rd, 2018. So is that not part of the record here? Your Honor, could you repeat that date for me again? Well, let me just, I'd like you to go ahead with some more substantive aspects or my colleagues to go ahead, but that's my reading of the record. Don't take the time now. There are a number of other issues that I think are probably more important. Justice Harris, I'm sorry I may have interrupted you. No, that's fine. Ms. Wilson, I simply want to point out, again, the eight-year period in which the post-conviction proceedings were pending. And as indicated during Mr. Peterson's time, it does not appear that there is any time limitation for post-conviction proceedings. But according to the state here, there doesn't need to be and there is no time limit. What if it was 20 years that this case had been proceeding and finally the defendant went pro se? Is there no outside limit outside of which, you know, you could say this was unreasonable assistance because there was no conclusion, no culmination of the post-conviction request initially made by defendant? Yes, Your Honor, there is no time limit as to when this has to be decided within the courts. And therefore, the eight years, even though truncated because every single time the defendant filed a motion, the representation would stop. However, that eight years does not matter. How long it takes does not matter. And because the counsel was reasonable and he had reasonable assistance of counsel during that time, so it does not matter. In my scenario where 20 years have passed, doesn't it defy reason to identify that as either reasonable assistance or even assistance, period? Your Honor, I feel like it depends on the facts of the case. And if it's a very rigorous case that takes more fact gathering and inquiry as to the claims that the defendant is having in their post-conviction petition, it really just depends on that specifically, whether or not the 20 years is reasonable or unreasonable, Your Honor. However, the reasonable assistance is a statutory right, and therefore, that is a lower standard than the constitutional right during a trial court setting, Your Honor. Thank you, I appreciate it. Yes, Your Honor. Second, the circuit court properly denied defendant's motion for appointed counsel. This court has determined that no conflict exists within the public defender when a defendant is represented on a different matter in People v. Robinson. Here, the court addressed defendant's argument that no conflict existed because the same public defender was not representing him in his post-conviction proceeding. However, defense argues on their opening brief that there were three different motions for appointed counsel and that each of them had different grounds. However, each motion consisted of the argument that defendant believed the public defender could not preserve the integrity of defendant's issues because defendant had ineffective assistance of counsel claim on an attorney from the public defender's office. Thus, this court should affirm the circuit court's decision on this issue. Are there any other questions before I conclude, Your Honors? I don't see any other questions. Yes, and thank you for your time, Your Honors. For these reasons, the people of the state of Illinois respectfully request that you affirm. All right, thank you. Mr. Peterson, rebuttal argument? You're muted, sir. Realized the moment I started talking, Your Honor. Your Honor, I have, I believe, three main points. I would like to start with issue two. The trial court believed it had neither the authority nor the ability to recruit private counsel. It looks to me that Peoria County does not have a formalized list of standby counsel. But Mr. Armstrong himself, in the motions that he filed in June of 2016, found lawyers who do this sort of work pro bono. So there is no formalized list, but the trial court was incorrect in holding that its hands were tied. I know I'm speaking to judges with trial experience. This is something that's within the trial court's power to do. And to the extent that Mr. Armstrong's complaints at the Peoria Public Defender's Office was conflicted and wouldn't work for him, I understand that claim, given the time of this case, given what they actually did for him. I can't blame him for thinking that there must have been some sort of conflict because no one was working for him. But, Justice Zinoff, I'd like to focus on your question about whether he's willing to work with his lawyers. At the time in 2015, when he was filing the first motion and at the time that he was finding pro bono attorneys, you have Mr. Sheets taking the case, and in a January 2015 hearing, he says, I haven't talked to Mr. Armstrong yet. In March 2015, he says, I haven't talked to Mr. Armstrong yet. And in May 2015, he says, I had a legal call set up with Mr. Armstrong, but it wasn't being able to be completed. The court presses him and says, what happened? And he eventually admits that it was a fault on his end. So as Mr. Armstrong's filing his motions, he has an attorney that's taking five months, six months to even talk to him. Compare this to when Mr. Ramos was representing him. We're talking about 2016 to 2019 in terms of time. If you compare the timelines of when Mr. Armstrong is filing these motions to go pro se and when he's represented by Mr. Ramos, he essentially stops filing them. I do agree just as enough with your timeline that that that motion wasn't denied until February 23rd of 2018. He then doesn't file another motion until 2021. When Mr. Ramos is accomplishing things for him, he's not trying to fire him. The central problem here is that nothing's getting done. And that's why even by the end, his phrasing is I'd be better off doing this alone. Maybe it's because they're conflicted. Maybe it's because they don't have the resources. But whatever is going on, nothing is happening. And that that's really what's going on here. Justice Harris, your question about longer time limits, the same way that I would concede there's absolutely not unreasonable assistance if this lasted for one day. I think if we were here in 2045 and we were talking about the 16 lawyers that represented Mr. Armstrong over that period, I think this would be a slam dunk win on my side. So there's absolutely an outer limit at some point. But I also agree with Mrs. with Ms. Wilson that the context of the case matters. If if something really does take that long, then it really does take that long. But by the end, Mr. Bowden and Mr. Vespa are not even given reasons for what's going on. They're not showing their work there on this. I don't know that they did any work and that that matters. There there comes a point where the guarantee of counsel and well, it is not a constitutional guarantee. It is a statutory guarantee where that has to matter and they have to do something. And, yes, this is an old case in the scheme of things. Yes, this is an offense that began before Ms. Wilson was in college, let alone law school. But all the time that this petition is pending, Mr. Armstrong is sitting in prison. Eight years of sitting in prison and the best he can hope for is that his fourth lawyer would at least grab the baton from where his third lawyer left off. And all his third lawyer was doing was asking for continuance after continuance without saying why. That's unreasonable assistance, your honors. Mr. Armstrong is statutorily entitled, but he is entitled to an attorney that will fight for him that for an attorney that will accomplish the 651 C tasks that didn't happen here. And we'd ask you to reverse. All right, thank you, Mr. Peterson. Thank you both. The court will take the matter under advisement and will issue a written decision.